## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

RHONDA HARMON,                      )
                                    )
                                    )
                    Plaintiff,      )
vs.                                 )          NO.  CIV-05-0342-HE
                                    )
JO ANNE B. BARNHART,                )
Commissioner, Social Security       )
Administration,                     )
                                    )
                    Defendant.      )

### ORDER

Plaintiff Rhonda Harmon instituted this action seeking judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for supplemental security income payments. Consistent with 28 U.S.C. § 636(b)(1)(B), the case was referred to Bana Roberts, who has issued her Report and Recommendation suggesting that the Commissioner's decision be reversed and the matter remanded for further administrative proceedings. The magistrate judge found that the administrative law judge failed to make the required written finding as to the mental demands of the plaintiff's past relevant work.

The parties, having failed to object to the Report and Recommendation, waived their right to appellate review of the factual and legal issues it addressed. United States v. One Parcel of Real Property, 73 F.3d 1057, 1059-60 (10th Cir. 1996), *cert. denied*, 519 U.S. 909 (1996). *See* 28 U.S.C. § 636(b)(1)(C); LCvR72.1(a). Accordingly, the court adopts

1

Magistrate Judge Robert's Report and Recommendation, **REVERSES** the final decision of the Commissioner and **REMANDS** the case for further proceedings consistent with the Report and Recommendation, a copy of which is attached to this order.

**IT IS SO ORDERED**.

Dated this 4th day of January, 2006.

JOE HEATON
UNITED STATES DISTRICT JUDGE

## ATTACHMENT

"Report and Recommendation [Doc. #22] filed November 30, 2005".

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

RHONDA HARMON,                          )
                                        )
                Plaintiff,              )
                                        )
vs.                                     )     Case No. CIV-05-342-HE
                                        )
JO ANNE B. BARNHART,                    )
Commissioner, Social Security           )
Administration,                         )
                                        )
                Defendant.              )

## REPORT AND RECOMMENDATION

Rhonda Harmon ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded.

**Administrative Proceedings**

Although the administrative record in this matter is less than clear, the parties and the Administrative Law judge ("ALJ") appear to agree that Plaintiff initiated these proceedings in January or February of 2002, by filing an application for supplemental security income payments, alleging disability as a result of bipolar disorder, depression, anxiety and pain in her lower back [Tr. 13 and 117; Doc. Nos. 19, p. 1 and 20, p. 1]. The claim was denied initially and upon reconsideration [Tr. 31 - 32 and 34 - 35]. At

Plaintiff's request, an ALJ conducted a July, 2004, hearing where Plaintiff, who was represented by counsel, Plaintiff's sister and a vocational expert testified [Tr. 38 and 301 - 340]. In his July, 2004, hearing decision, the ALJ determined that Plaintiff was not disabled as she retained the capacity to perform her past relevant work [Tr. 13 - 18]. The Appeals Council of the Social Security Administration declined Plaintiff's review request, and Plaintiff subsequently sought review of the Commissioner's final decision in this court [Tr. 5 - 8].

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). However, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" for purposes of supplemental security income benefits as the "inability to engage in any substantial gainful activity by reason

2

of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. § 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Where Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984). In this case, the ALJ determined that Plaintiff was able to perform her past relevant work and consequently, concluded the inquiry at the fourth step.

## The ALJ's Decision

The ALJ determined that Plaintiff – thirty-five years old with a tenth grade education and with past relevant work experience as a stocker, a dishwasher and a geriatric nurse assistant – was severely impaired by bipolar disease [Tr. 14 - 15].[1] In connection with that disorder, the medical record reflected that Plaintiff had received medication management including Lithium, Zoloft, Buspar, Vistaril and Xanax [Tr. 14

---

[1]The ALJ also found that Plaintiff had no severe physical impairments [Tr. 15], a determination unchallenged here. Accordingly, the ALJ's decisional references to the evidence relating to Plaintiff's physical impairments will not be addressed.

3

and 149 - 171]. Progress notes from Mental Health Services of Southern Oklahoma, dated from January 29, 1997 until October 7, 1998, reveal that Plaintiff was initially seen for a major depressive episode, recurrent and severe; she subsequently experienced manic episodes and was diagnosed with bipolar disorder [Tr. 14 - 15 and 149 - 171]. The ALJ noted that the next record of treatment was on July 24, 2001 by Joseph Ripperger, M.D., who treated Plaintiff until June 25, 2002, for Bipolar I Depression; Xanax and Zoloft were prescribed [Tr. 15 and 246 - 250].

Turning next to the consultative examinations ordered in connection with Plaintiff's claims, the ALJ addressed two psychological exams performed by R. Keith Green [Tr. 15, 209 - 214 and 266 - 267]. The first exam was on June 28, 2002, when Dr. Green assessed "Bipolar I Disorder, Depressed (by medical report)," and noted that Plaintiff complained she had difficulty being around people without having a panic attack – episodes reportedly occurring at least once a week – along with eating disorder, anhedonia and social avoidance [Tr. 15 and 209 - 214]. At a subsequent exam on December 16, 2002, Plaintiff reported that her medication had been changed from Xanax to Vistaril and that her Zoloft dosage had been increased [Tr. 15 and 266-267]. Dr. Green administered the WAIS-III – Wechsler Adult Intelligence Scale - Third Edition – and noted the results placed Plaintiff within the low average range of intellectual functioning with a full scale IQ of 87. *Id.* Dr. Green's diagnostic impression remained "Bipolar I Disorder, Depressed (by medical report)." *Id.*

Following a review of this medical evidence, the ALJ concluded that while Plaintiff's bipolar disorder was a severe impairment, it was not an impairment of such

4

severity as to meet or equal the requirements of an Appendix 1 listed impairment, specifically, Listing 12.04, affective disorder.[2] [Tr. 15 - 16]. The ALJ noted the December, 2002, mental status exam where Plaintiff was oriented times three, her affect was constricted, and her mood was appropriate; she had difficulty with concentration, arithmetic and abstract reasoning, and her memory was decreased, and she reportedly did not socialize because she did not like to be around crowds of people [Tr. 16]. The ALJ concluded that under the paragraph B criteria, Plaintiff had moderate restrictions of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation. *Id.*

The ALJ then proceeded to an assessment of Plaintiff's credibility, finding that her allegations of disabling pain and discomfort were not supported by credible facts and findings. *Id.* Because Plaintiff has not challenged the ALJ's credibility determination on appeal, no analysis of such finding is included here.

The ALJ next takes up the evaluation of the record's medical opinions – statements from acceptable medical sources reflecting judgments about the nature and severity of Plaintiff's impairments and resulting limitations – and notes, generally, that no work-related restrictions had been placed on Plaintiff by any treating source [Tr. 16 - 17]. The ALJ then stated his concurrence with the opinions of the State agency medical consultants: Plaintiff can understand and perform simple tasks and some complex ones; she can interact appropriately with others at a superficial level; she cannot interact with

---

[2]*See* C.F.R., Part 404, Subpart P, Appendix 1.

the general public, and she can adapt to a work situation [Tr. 17]. As to the January 24, 2002, report of Joseph Ripperger, M.D., where Dr. Ripperger stated that Plaintiff was unable to work because of her bipolar disorder [Tr. 246], the ALJ declined to give such opinion controlling weight or special significance for two reasons [Tr. 17]. First, Dr. Ripperger's treatment notes [Tr. 247] indicated that on November 13, 2001, Plaintiff's bipolar condition was stable, and Plaintiff reported she was doing well with no side effects from her medication [Tr. 17]. Second, Dr. Ripperger's statement that Plaintiff was unable to work was a opinion on an issue specifically reserved to the Commissioner. *Id. See* 20 C.F.R. § 416.927 (e).[3]

The ALJ concluded that Plaintiff has the following residual functional capacity ("RFC"): "[Plaintiff] has no exertional limitations. She can understand and perform simple tasks and some complex ones. She can interact appropriately with others at a superficial level but not the general public, and she can adapt to a work situation." [Tr. 17 - 18]. The ALJ then stated that the impartial vocational expert ("VE") had identified Plaintiff's past relevant work as a stocker, a dishwasher and a geriatric nurse assistant; he concluded, based on this RFC, that Plaintiff would be able to perform her past relevant work and, consequently, was not under a disability within the meaning of the Social Security Act. *Id.*

**Plaintiff's Claim of Error**

Plaintiff's overarching claim of error is that the ALJ failed to recognize the impact of Plaintiff's mental impairments on her ability to perform her past relevant work, thus

---

[3]Plaintiff has not contested the ALJ's conclusions regarding Dr. Ripperger's January 24, 2002, report.

6

erring in his determination at the fourth step of the sequential process. Plaintiff's argument is grounded on the decision in *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996) in which the three phases of a step four analysis were detailed:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Id.* at 1023 (citations omitted).

Specifically, Plaintiff maintains that in assessing her RFC – the most she could still do despite her limitations – the ALJ failed to relate his conclusions to the actual evidence of record, including the opinions of medical experts and, accordingly, erred at the first phase of the step four evaluation. Plaintiff further claims that the ALJ erred at phase two in failing to inquire, or to make specific findings, regarding the mental demands of Plaintiff's past relevant work and, consequently, was unable to make the necessary findings at phase three with respect to Plaintiff's current ability to meet the mental demands of her past relevant work.

## Phase One - Plaintiff's RFC

Plaintiff argues that "the ALJ's conclusions as to the Plaintiff's abilities differed dramatically from that of the ALJ's own medical experts . . . [and] [y]et, without explanation, the ALJ stated he concurred with the opinions of the Defendant's medical consultants." [Doc. No. 19, pp. 8 - 9]. In order to establish this point, Plaintiff has provided the court with pertinent page citations to the record. The undersigned has

carefully reviewed the record references offered by Plaintiff and finds that, contrary to Plaintiff's assertions, the ALJ's assessment of Plaintiff's RFC is consistent with that of the medical consultants and is supported by substantial evidence in the record.

The first of four groups of record references proffered by Plaintiff begins with page 205 and ends with page 213. Pages 205 through 208 are part of a physical consultative examination report which the undersigned assumes – in the absence of a challenge to the ALJ's findings with respect to physical limitations – were inadvertently included by Plaintiff. Pages 209 through 213 comprise the report of Dr. Green's initial mental status examination of Plaintiff. Dr. Green, after summarizing Plaintiff's complaints of difficulty in being around people, reported the results of Plaintiff's simulated problem solving, finding that Plaintiff had difficulty with concentration, arithmetic and abstract reasoning, and with remote and recent memory [Tr. 212]. These findings were echoed by the ALJ when evaluating the paragraph B criteria of Listing 12.04 and assessing Plaintiff with moderate limitations in activities of daily living and social functioning as well as in maintaining concentration, persistence or pace [Tr. 16].   The RFC formulated by the ALJ is completely consistent with those findings and with Dr. Green's report as a whole: "[S]he can understand and perform simple tasks and some complex ones" [Tr. 17, ALJ's RFC] / "She carries out simple and many detailed instructions though she has difficulty on more complex ones or sequences of instructions" [Tr. 212, Dr. Green's report]; "She can interact appropriately with others at a superficial level but not the general public" [Tr. 17, ALJ's RFC].

The second set of record references consists of a Mental Residual Functional Capacity Assessment and Psychiatric Review Technique completed by Sally Varghese, M.D., a psychiatrist and State agency medical consultant [Tr. 217 - 230]. The opinions reflected in each of these reports are, once again, totally consistent with the ALJ's findings: no significant limitation in the ability to understand and carry out short and simple instructions but a marked inability to do so with detailed instructions [Tr. 217]; a moderate limitation in interacting appropriately with the public [Tr. 218], and moderate restrictions in activities of daily living and social functioning as well as in maintaining concentration, persistence or pace [Tr. 230]. The third set of record citations is composed of two pages from a Mental Residual Functional Capacity Assessment completed by another medical consultant, this time finding that Plaintiff was markedly limited in her ability to interact appropriately with the public [Tr. 271] and concluding, as did the ALJ, that "[Plaintiff] can understand and perform simple tasks and some complex ones. She can interact appropriately with others at a superficial level, but not the general public. She can adapt to a work situation." [Tr. 272].

The fourth and final page citations reflect the results of Dr. Green's second examination of Plaintiff as well as Plaintiff's scoring on the WAIS-III [Tr. 266 - 267]. Once again, there is nothing in Dr. Green's report which is inconsistent with the ALJ's functional assessment of Plaintiff. While Plaintiff observes that Dr. Green suggests that achievement testing be administered to rule out learning disabilities, she presents no further argument in this regard. There is clearly no indication in Dr. Green's findings

9

that Plaintiff is unable to perform simple tasks in isolation from the general public,[4] and Plaintiff's RFC as formulated by the ALJ is supported by substantial evidence in the record.

## Phases Two and Three - Demands of Plaintiff's Past Relevant Work and Ability to Perform Such Work

Plaintiff further contends that the ALJ failed to make the requisite phase two inquiry or findings regarding the mental demands of Plaintiff's past relevant work as well as the necessary phase three findings with respect to Plaintiff's ability to meet the mental demands of her past relevant work despite her mental impairments.  Plaintiff maintains that the ALJ's decision not only "abdicat[es] his fact finding and evaluation responsibilities to the VE" but that it does not allow meaningful judicial review [Doc. No. 19, p. 11].

There is no question that *Winfrey* requires specific findings at each of the three phases of step four and, likewise, no question that the ALJ's findings here are sparse.  In determining whether the decision is nonetheless adequate, two subsequent Tenth Circuit decisions are instructive.

The object of the holding in *Winfrey* was discussed in an unpublished decision in *Westbrook v. Massanari*, No. 01-2151, 26 Fed. Appx. 897, 903 (10th Cir. Feb. 8, 2002)[5] where the claimant, as here, raised the ALJ's failure to discuss the demands of her past relevant work:

_____

[4]Plaintiff pointed out that Dr. Green stated in his first report that Plaintiff was not considered to be capable of handling her own finances in a responsible manner [Tr. 212].  It is worth noting that Dr. Green reached the opposite conclusion at the later examination [Tr. 267].

[5]This unpublished decision is cited as persuasive authority pursuant to Tenth Circuit Rule 36.3.

> [Claimant] cites *Winfrey* in arguing that the ALJ's findings were not
> particularly precise enough to satisfy that case's mandate of specific
> findings at each of the three phases of step four. *See Winfrey*, 92 F.3d at
> 1023. Our holding in *Winfrey*, however, is not designed to needlessly
> constrain ALJ's by setting up numerous procedural hurdles that block the
> ultimate goal of determining disability. Rather, its concern is with the
> development of a record which forms the basis of a decision capable of
> review.

The *Westbrook* panel continued by finding the ALJ's duty to be that of inquiry and of factual development, underscoring that the claimant continued to bear the burden of proving that she was unable to perform her past work and was, consequently, disabled.

Then, in the published decision of *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir. 2003), the court addressed an ALJ's reliance on the testimony of a VE, distinguishing between an ALJ's appropriate reliance on information furnished by the VE in support of the ALJ's own findings and an ALJ's improper delegation of analysis to a VE. *See id.* at 761. The step two and three findings made by the ALJ were quoted and found adequate to satisfy *Winfrey. Id.* at 760 - 761.

Based upon the holding in *Doyal,* the ALJ's findings at phase three in the instant case, while scant, are sufficient. As in *Doyal,* the ALJ referred to the testimony of the VE and then specifically found that "claimant's past relevant work as stocker, dishwasher and geriatric nurse assistant did not require the performance of work-related activities precluded by her residual functional capacity." [Tr. 18]. Thus, the ALJ made a specific phase three finding that Plaintiff could meet the demands of her past relevant work. As to phase two, however, while, as the Commissioner argues, the ALJ questioned the VE at length about the scope of Plaintiff's previous work, he wholly failed to make a written finding concerning the mental demands of Plaintiff's past relevant work. Had the ALJ

11

made *any* written mention of the mental demands of Plaintiff's past work – even though "not particularly precise," *see Westbrook*, 26 Fed. Appx. at 903 – the decision could likely stand because the ALJ met his duty to inquire and develop the facts. *See id.* However, it has long been the rule of the Social Security Administration that "[i]n finding that an individual has the capacity to perform a past relevant job, the determination or decision *must* contain among the findings the following specific findings of fact: . . . 2. A finding of fact as to the physical and mental demands of the past job/occupation." Social Security Ruling 82-62, 1982 WL 31386, at *4 (emphasis added). In the total absence of a finding required by the Administration's own rulings, it is recommended that the Commissioner's final decision be reversed and the matter remanded for further proceedings.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the final decision of the Commissioner be reversed and the matter remanded. The parties are advised of their right to object to this Report and Recommendation by December 20, 2005, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United*

*States*, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

   ENTERED this 30th day of November, 2005.


BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE

13